ACCEPTED
07-15-00204-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
10/26/2015 12:00:00 AM
Vivian Long, Clerk

NO. 07-15-00204-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

_____

FILED

October 26, 2015

Seventh Court of Appeals
Vivian Long
Clerk

JERMAIN GAITHER
V.
THE STATE OF TEXAS

_____

ON APPEAL FROM THE 140TH DISTRICT COURT
OF LUBBOCK COUNTY, TEXAS
CAUSE NO. 2013-400,719

_____

BRIEF FOR THE STATE

_____

MATTHEW D. POWELL
Criminal District Attorney
Lubbock County, Texas

COURTNEY GRAFFT
JENNIFER SLACK
Assistant Criminal District Attorneys
(Trial Attorneys)

ORAL ARGUMENT WAIVED

JEFFREY S. FORD
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24047280
P.O. Box 10536, Lubbock, TX 79408
Phone (806)775-1166
FAX: (806)775-7930
E-mail: JFord@co.lubbock.tx.us
(On appeal)
**ATTORNEY FOR THE STATE**

## Identity of Parties and Counsel

**Appellant:**

Jermain Gaither

**Appellant's trial attorneys**:

Russell "Rusty" Gunter, Attorney at Law, 1213 Avenue K, Lubbock, TX 79401; phone (806)711-3933; fax (806)711-3935

Matt Morrow, Attorney at Law, 806 Main Street, Lubbock, TX 79401; phone (806)763-4568

**Appellant's appellate counsel:**

Joel Cook, Law Offices of Wm. Everett Seymore, 810 Main Street, Lubbock, TX 79401; phone (806)747-3825; fax (806)747-3851

**State of Texas:**

At trial:

Courtney Grafft and Jennifer Slack, Assistant Criminal District Attorneys, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, TX 79408; phone (806)775-1100; fax (806)775-7930

On appeal:

Jeffrey S. Ford, Assistant Criminal District Attorney, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, TX 79408; phone (806)775-1166; fax (806)775-7930

**Trial Judge:**

Honorable Jim Bob Darnell, Presiding Judge, 140th District Court of Lubbock County, Texas, Lubbock County Courthouse, 904 Broadway, Suite 349, Lubbock, TX 79401

## Table of Contents

**PAGES**

Identity of Parties and Counsel ...................................................................i

Table of Contents ................................................................................ ii

Table of Authorities .................................................................................iv

Statement of the Case.......................................................................... vii

Statement of the Facts .............................................................................1

Summary of the Argument...........................................................................3

Argument and Authorities…………………………………………………………....5

Sole Issue Presented: Appellant argues that the evidence is legally insufficient to support the deadly weapon element of the aggravated robbery offense because no rational trier of fact could have found that the firearms used during the offense were real and could cause death or serious bodily injury. When the evidence is considered in the light most favorable to the verdict, any rational trier of fact could have found every element of the offense beyond a reasonable doubt. The evidence shows the following: (1) Appellant and his accomplice entered the 7-11 with the intent to rob it; (2) Appellant and his accomplice pointed what appeared to the victim to be firearms at him; (3) one of the robbers told the victim that the pistol was real and that he would be shot if he did not comply with his demands; (4) the victim believed that the threat posed by the robbers with their firearms was real

and he was frightened for his life; and (5) Appellant stated during an interview with police that he thought the firearm used by his accomplice was real. Was the evidence sufficient to show that Appellant and/or his accomplice used or exhibited a firearm during the commission of the offense? ......................................................5

    **Standard of Review**………………………………………………………..5

    **I. The evidence is legally sufficient to show that Appellant and/or his accomplice used or exhibited a deadly weapon during the commission of an aggravated robbery.**………………………………..7

       i. *Lowe's testimony that real pistols were pointed at him is sufficient evidence for a rational juror to find that a firearm was used in the commission of the offense*………………………………………….9

       ii. *Appellant's argument that his conviction should be reformed to robbery since he only used a toy gun during the aggravated robbery fails because of the Law of Parties* …………………………………14

    **Conclusion**…………………………………………………….................16

Conclusion and Prayer ........................................................................................17

Certificate of Service ..........................................................................................17

Certificate of Compliance……………………………………………………18

Table of Authorities

**SUPREME COURT CASELAW**                                                      **PAGES**

*Jackson v. Virginia*,
    443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)…………………………..6, 7

**TEXAS CASELAW**

*Arthur v. State*,
    11 S.W.3d 386 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)………...9, 10

*Banda v. State*,
    758 S.W.2d 902 (Tex. App.—Corpus Christi 1988, no pet.)......................11, 13

*Benavides v. State*,
    763 S.W.2d 587 (Tex. App.—Corpus Christi 1988, pet. ref'd)………..10, 11, 13

*Brooks v. State*,
    323 S.W.3d 893 (Tex. Crim. App. 2010) (*plur. op.*)………….......................6

*Dobbs v. State*,
    434 S.W.3d 166 (Tex. Crim. App. 2014)…………………….......................6

*Ex parte Huskins*,
    176 S.W.3d 818 (Tex. Crim. App. 2005)………………………………………..8

*Ford v. State*,
    152 S.W.3d 752 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)…………...10

*Johnson v. State*,
    No. 14-02-00901-CR, 2003 WL 22012693 (Tex. App.—Houston [14th Dist.]
    Aug. 26, 2003, pet. ref'd) (*not designated for publication*)..............................13

*Lucio v. State*,
    351 S.W.3d 878 (Tex. Crim. App. 2011)……………………………………..7

*O'Briant v. State*,
    556 S.W.2d 333 (Tex. Crim. App. 1977)………………….......................9

*Price v. State*,
227 S.W.3d 264 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd)……..10, 13

*Riddick v. State*,
624 S.W.2d 709 (Tex. App.—Houston [14th Dist.] 1981, no pet.)………...10-14

*Toy v. State*,
855 S.W.2d 153 (Tex. App.—Houston [14th Dist.] 1993, no pet.)………...9, 10

*True v. State*,
No. 01-08-00175-CR, 2009 WL 1688278, 2009 Tex. App. LEXIS 4503 (Tex. App.—Houston [1st Dist.] June 18, 2009, no pet.) (*not designated for publication*)……………………………………………………………10, 13

*Winfrey v. State*,
393 S.W.3d 763 (Tex. Crim. App. 2013)………………………........................6

*Wright v. State*,
591 S.W.2d 458 (Tex. Crim. App. [Pan. Op.] 1979)……….........................10, 14

## TEXAS RULES AND STATUTES

TEX. PEN. CODE ANN. § 1.07(a)(17)(A)…………………………………………..8

TEX. PEN. CODE ANN. § 7.02(a)(2)…………………………………………….15

TEX. PEN. CODE ANN. § 29.03(a)(2)…………………………………………...7

TEX. PEN. CODE ANN. § 46.01(3)…………………………………………...8

TEX. R. APP. P. 3.2……………………………………………………………vi

NO. 07-15-00204-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

_____

JERMAIN GAITHER
V.
THE STATE OF TEXAS

_____

BRIEF FOR THE STATE

_____

**To the Honorable Court of Appeals**:

The State of Texas, the prosecuting authority in Cause No. 2013-400,719 in the 140th District Court of Lubbock County, and Appellee before the Seventh Court of Appeals, respectfully submits this brief in reply to the brief filed by Appellant appealing his conviction for the offense of Aggravated Robbery. The parties will be referred to as "Appellant" and "State."[1]

---

[1] TEX. R. APP. P. 3.2.

Statement of the Case

Appellant was charged by indictment on December 3, 2013, with the offense of aggravated robbery. One felony enhancement paragraph was also alleged in the indictment.[2] Following a three-day jury trial, from April 20-22, 2015, Appellant was found guilty of the offense.[3] The trial court sentenced Appellant to fifty-five (55) years imprisonment on April 23, 2015.[4] The trial court certified that Appellant has the right of appeal.[5]

---

[2] (Clerk's Record "CR" p. 6).
[3] (CR p. 87) (Reporter's Record "RR" vol. 5, p. 27).
[4] (RR vol. 7, p. 20).
[5] (CR p. 86) (RR vol. 7, p. 23).

## Statement of Facts

Douglas Lowe, a convenience store clerk, was working alone at the 7-11 on 19th Street and Iola Avenue in Lubbock on the night of November 12, 2013.[6] At approximately 11:30 p.m., two individuals wearing masks entered the store.[7] One jumped over the counter and the other walked around the corner, each aiming a firearm at Lowe.[8] One man walked around the corner and told Lowe, "You know what to do. You know what to do. Open the register."[9] Following his training received as a 7-11 employee, Lowe opened the register and the men took the money inside it.[10] The men also broke into a filing cabinet and took rolls of quarters that were inside.[11] One of the men then demanded that Lowe open the safe, despite the fact that one did not exist at the 7-11.[12] When Lowe informed them of this fact, the man pointed his firearm at Lowe and stated, "This is real. If you don't open this safe, I'm going to shoot you in the leg."[13] After taking some cigarettes and more money from a cash dispensing machine, both subjects left the 7-11 and fled the scene in a vehicle that had pulled up during the robbery.[14]

---

[6] (RR vol. 4, pp. 22-23).
[7] (RR vol. 4, p. 25).
[8] (RR vol. 4, p. 26).
[9] (RR vol. 4, p. 28).
[10] (RR vol. 4, p. 29).
[11] (RR vol. 4, pp. 31-32).
[12] (RR vol. 4, p. 32-33).
[13] (RR vol. 4, p. 33).
[14] (RR vol. 4, pp. 37-39).

During the robbery, Lowe was "scared to death" and felt that his life was in danger during this incident.[15] He did not activate the panic alarm because he was too afraid to do so in the men's presence, especially after being told that he would be shot if he did not comply with their demands.[16] Although Lowe was unable to determine the exact type of firearms the men used, Lowe was able to identify them as pistols and clearly saw four to five inches of the pistols' barrels protruding from out of the men's long-sleeved shirts.[17] Lowe was able to determine that one pistol's barrel had a black finish and was made of metal.[18] He is familiar with the plastic toy firearms his nephew plays with. With this fact in mind, Lowe did not believe that the pistols used during the robbery looked anything like the toy firearms his nephew plays with and "a hundred percent . . . thought it was the real thing aimed at [him]."[19] Lowe also testified that the pistol used by the robber looked "darn real." Both pistols used by the robbers were similar in appearance.[20]

A tip given to police on November 15, 2013, led the police to Appellant.[21] During his interview with police, Appellant admitted to taking part in the

---

[15] (RR vol. 4, pp. 33, 40). Two days later, Lowe was still emotional and upset because of the incident when he was interviewed by police. (RR vol. 4, p. 127)
[16] (RR vol. 4, p. 35).
[17] (RR vol. 4, pp. 27, 57).
[18] (RR vol. 4, pp. 57-58).
[19] (RR vol. 4, p. 58).
[20] (RR vol. 4, p. 61).
[21] (RR vol. 4, p. 129).

2

aggravated robbery of the 7-11.[22] During his interview, Appellant claimed that he used a toy gun during the aggravated robbery, but that the firearm used by his accomplice "possibly could be real."[23] When asked a second time by police during the interview, Appellant said that he "thought [the firearm used by his accomplice] was real."[24]

## Summary of the Argument

Appellant argues in his sole issue that the evidence is insufficient to show the deadly weapon element of the offense. When the evidence is considered in the light most favorable to the verdict, the deadly weapon element of the offense was proven beyond a reasonable doubt. Lowe's testimony shows that the pistols exhibited by Appellant and his accomplice appeared to be actual firearms, as demonstrated from the dark finish and metallic appearance of the visible portions of the pistols. In addition, Lowe testified that neither pistol used during the aggravated robbery appeared to be a toy. During the commission of the robbery, one of the robbers told Lowe that his pistol was real and that Lowe would be shot if he did not comply with his demands. Further, both pistols were brandished in a manner consistent with the way a robber would display a firearm during a

---

[22] (RR vol. 4, p. 138).
[23] (RR vol. 4, pp. 144-46).
[24] (RR vol. 4, p. 146).

robbery—pointed at the victim in a threatening manner in order to convince the victim to hand over money. Finally, while Appellant claimed that he used a toy gun during the aggravated robbery, Appellant himself stated in an interview with police that he thought the firearm used by his accomplice was real.

Appellant argues that the pistols used during the robbery were not completely visible, and thus could have been anything from toys to metal tubes that looked like firearm barrels. Appellant further argues that if the weapons used during the aggravated robbery were not real firearms, the deadly weapon element of aggravated robbery has been negated and the conviction should be reformed to the lesser included offense of robbery. Appellant's arguments fail, however, because appellate courts have long held that a witness or victim does not need to see the entire firearm used during the commission of an aggravated robbery in order to uphold a conviction for aggravated robbery. Further, under the Law of Parties, Appellant should be charged with the same crime as his accomplice, who he believed used a real firearm during the aggravated robbery.

<u>Argument and Authorities</u>

<u>Sole Issue Presented</u>

Appellant argues that the evidence is legally insufficient to support the deadly weapon element of the aggravated robbery offense because no rational trier of fact could have found that the firearms used during the offense were real and could cause death or serious bodily injury. When the evidence is considered in the light most favorable to the verdict, any rational trier of fact could have found every element of the offense beyond a reasonable doubt. The evidence shows the following: (1) Appellant and his accomplice entered the 7-11 with the intent to rob it; (2) Appellant and his accomplice pointed what appeared to the victim to be firearms at him; (3) one of the robbers told the victim that the pistol was real and that he would be shot if he did not comply with his demands; (4) the victim believed that the threat posed by the robbers with their firearms was real and he was frightened for his life; and (5) Appellant stated during an interview with police that he thought the firearm used by his accomplice was real. Was the evidence sufficient to show that Appellant and/or his accomplice used or exhibited a firearm during the commission of the offense?

**Standard of Review**

In assessing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[25] In conducting this review, an appellate court considers all evidence in the record, whether it was admissible or inadmissible.[26] In criminal cases, "only that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction."[27] Each fact need not point directly and independently to the guilt of the appellant, "as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[28]

A reviewing court is required to defer to the jury's credibility and weight determinations because "the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony."[29] The standard gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[25] *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (*citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).
[26] *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).
[27] *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (*plur. op.*) (Cochran, J., concurring).
[28] *Dobbs*, 434 S.W.3d at 170.
[29] *Brooks,* 323 S.W.3d at 899 (*emphasis taken from opinion*).

facts."[30] A reviewing court must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution.[31]

**I. The evidence is legally sufficient to show that Appellant and/or his accomplice used or exhibited a deadly weapon during the commission of an aggravated robbery**

Appellant was charged with and convicted of the offense of aggravated robbery. The indictment alleged that Appellant did "heretofore on or about the 12th day of November, A.D. 2013, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Douglas Lowe in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm."[32] The elements of the offense—as modified by the language of the indictment—are as follows: (1) Appellant (2) while in the course of committing theft of property (3) with intent to obtain or maintain control over said property (4) threatened or placed Douglas Lowe in fear of imminent bodily injury or death (5) and used or exhibited a deadly weapon.[33]

Appellant's sufficiency challenge focuses solely on the fourth element of the offense, *i.e.,* whether the evidence is sufficient to show that Appellant or his

---

[30] *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *accord Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).
[31] *Jackson* at 326, 99 S. Ct. at 2793; *Dobbs* at 170.
[32] (CR p. 6).
[33] *See* TEX. PEN. CODE ANN. § 29.03(a)(2).

accomplice used or exhibited a deadly weapon during the commission of the offense. "Deadly weapon," for purposes of Appellant's sufficiency challenge, means "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury."[34] A "firearm" is "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use."[35]

After reviewing the evidence in the light most favorable to the verdict, the evidence is sufficient to show that Appellant, his accomplice, or both parties used firearms during the commission of the offense. First, Lowe was able to describe the firearms used during the aggravated robbery with certainty and particularity reasonable under the circumstances, testifying that the firearms looked very real to him. Second, Lowe was afraid for his life because he believed the firearms were real and capable of causing him death. Third, while Appellant claims that he only used a toy gun, he himself believed the firearm used by his accomplice during the aggravated robbery was real.

All of the foregoing is sufficient to show that any rational trier of fact could have found the deadly weapon element of the offense beyond a reasonable doubt.

---

[34] TEX. PEN. CODE ANN. § 1.07(a)(17)(A).
[35] TEX. PEN. CODE ANN. § 46.01(3). A firearm is considered a deadly weapon *per se*. *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).

Appellant, however, makes two arguments as to why the evidence is allegedly insufficient to support the deadly weapon element of the offense. First, he argues that the fact that Lowe only saw the barrel of the firearm during the aggravated robbery is insufficient evidence for a rational juror to find that a firearm was used during the aggravated robbery. Second, he argues that Appellant's belief that the firearm used by his accomplice "might" be real is insufficient to support a firearm finding. Each argument will be addressed in turn.

    *i. Lowe's testimony that real pistols were pointed at him is sufficient evidence for a rational juror to find that a firearm was used or exhibited in the commission of the offense.*

When an indictment for aggravated robbery alleges that the defendant used "a deadly weapon, to wit: a firearm," the State must prove beyond a reasonable doubt that the deadly weapon used during the aggravated robbery was a real firearm.[36] While the word "gun" can describe non-lethal weapons like BB guns, blow guns, and pop guns, the jury is allowed to make reasonable inferences when determining whether the firearm used in an aggravated robbery was a deadly weapon.[37] The use of the word "gun" instead of "firearm" during trial is sufficient to authorize a jury to find that a deadly weapon was used during the commission of

---

[36] *Arthur v. State*, 11 S.W.3d 386, 389 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).
[37] *O'Briant v. State*, 556 S.W.2d 333, 335-36 (Tex. Crim. App. 1977); *Toy v. State*, 855 S.W.2d 153, 159 (Tex. App.—Houston [14th Dist.] 1993, no pet.).

the offense.[38] The act of threatening a victim with a gun itself suggests that the weapon used is a firearm, and not a non-lethal weapon.[39] Further, "[a] complainant's uncontroverted testimony regarding the defendant's use and exhibition of a gun is legally [] sufficient to sustain a conviction for aggravated robbery."[40]

In addition, there are several factors considered by an appellate court in determining whether a jury's inferences made from a victim's testimony were reasonable. These factors include: (1) the victim's description of the firearm[41]; (2) the manner in which the firearm was used during the offense[42]; and (3) the victim's reaction to being confronted with a firearm.[43]

Based on these factors, there is little doubt that a reasonable jury, through Lowe's testimony, could have found that Appellant or his accomplice used a real firearm during the aggravated robbery. Lowe was able to identify the finish on the firearms as being dark in color and testified that he could determine that both pistols' barrels were made of metal. Further, Lowe testified with certainty that

---

[38] *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. [Pan. Op.] 1979).
[39] *Benavides v. State*, 763 S.W.2d 587, 589 (Tex. App.—Corpus Christi 1988, pet. ref'd) (*citing Riddick v. State*, 624 S.W.2d 709, 711 (Tex. App.—Houston [14th Dist.] 1981, no pet.).
[40] *True v. State*, No. 01-08-00175-CR, 2009 WL 1688278 at *4, 2009 Tex. App. LEXIS 4503 at *11 (Tex. App.—Houston [1st Dist.] June 18, 2009, no pet.) (*not designated for publication*) (*citing Ford v. State*, 152 S.W.3d 752, 755-56 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)).
[41] *See Arthur*, 11 S.W.3d at 389.
[42] *See Toy*, 855 S.W.2d at 159.
[43] *See Price v. State*, 227 S.W.3d 264, 267 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd).

neither firearm looked like a toy that his nephew played with, and that both firearms looked "darn real." Appellant, however, argues that Lowe's testimony is insufficient evidence for a juror to rationally find that firearms were used during the aggravated robbery.[44] While Lowe was unable to identify the exact type of pistol used by Appellant and his accomplice, and did not see either pistol in its entirety, this is not required for a conviction to be upheld.[45] Further, it is likely that Lowe was too frightened and distracted by the aggravated robbery taking place to pay closer attention to the exact type, make, and model of the firearms used. As a policy consideration, it is unreasonable to expect victims to be able to identify with precise specificity exactly what kind of firearms were used in aggravated robberies, especially given victims' frightening and stressful experiences.

In addition, there is no question that both firearms were exhibited in a manner consistent with the way that real firearms would be used during an aggravated robbery. Appellant and his accomplice both pointed firearms at Lowe in a threatening manner, with one robber telling Lowe, "This [firearm] is real. If you don't open the safe, I'm going to shoot you in the leg." The implication was

---

[44] (Appellant's Br. at 11-19).

[45] *See, e.g., Benavides*, 763 S.W.2d at 588–89 (upholding conviction of a defendant when the victim could only identify the firearm used in an aggravated robbery as an "automatic"); *Banda v. State*, 758 S.W.2d 902, 903-04 (Tex. App.—Corpus Christi 1988, no pet.) (suggesting that the "familiar shape" of the butt of a pistol seen by the victim can give rise to a reasonable inference that the defendant had a pistol); *Riddick*, 624 S.W.2d at 710-11 (upholding conviction of defendant when a witness saw only the end of a gun barrel sticking out of an unzipped bag).

clear: these firearms (and the threat they posed) were real and capable of causing serious bodily injury or death. Further, this kind of statement by an offender is itself an indication that a firearm was used during an aggravated robbery.[46]

Finally, it is undisputed that Lowe was afraid for his life during the incident and was still emotional and upset days later when interviewed by the police. This was doubtless due in large part to the credible threat he felt from the presence of real firearms being pointed at him. Combined, these facts established during Lowe's testimony gives considerable support to the notion that a reasonable juror could find that the firearms used during the aggravated robbery by Appellant and his accomplice were real.

Appellant argues that Lowe's testimony is insufficient to support a finding that a firearm was used during the commission of the aggravated robbery. In particular, he contends that Lowe did not see enough of the pistols to establish that they were firearms.[47] It is true that the pistols used during the aggravated robbery were partially obscured by the offenders' long-sleeved shirts; however, Appellant's argument ignore decades of caselaw upholding convictions in cases in which firearms used during aggravated robberies were not recovered or seen in their

---

[46] *Riddick* at 711 (stating that "the threats of the appellant to shoot [the victim] also supports the use of a firearm").

[47] (Appellant's Br. at 15-16, 18, 25).

entirety.[48] The identification of the exact kind of weapon used by an offender in an aggravated robbery has never been necessary to sustain his or her conviction. Thus, Appellant's argument that firearms used during robberies must be entirely seen or positively identified as firearms by victims in order to uphold an aggravated robbery conviction is absurd and without merit or foundation in established caselaw.

Likewise, Appellant's argument that the firearms used by Appellant and his accomplice *could* have been something else (*e.g.*, a metal tube or toy gun)[49] are improper. The jury is allowed to make reasonable inferences from the evidence presented at trial to determine whether a firearm was used in an aggravated robbery; there is no indication in the record that this jury did otherwise.[50]

Appellant's arguments regarding the sufficiency of the evidence supporting the deadly weapon element of the offense ignores the factual similarities between this case and the case of *Riddick v. State, supra*. In *Riddick*, the defendant robbed a

---

[48] *See, e.g., Price*, 227 S.W.3d at 266-67 (upholding a defendant's conviction when no evidence disproving the use of a firearm was presented at trial); *Benavides* at 588–89 (upholding conviction of a defendant when the victim could only identify the firearm used in an aggravated robbery as an "automatic"); *Banda*, 758 S.W.2d at 903-04 (suggesting that the "familiar shape" of the butt of a pistol seen by the victim supported a reasonable inference that the defendant had a pistol); *Riddick* at 710-11 (upholding conviction of defendant when a witness saw only the end of a gun barrel sticking out of an unzipped bag); *True*, 2009 WL 1688278 at *4-5, 2009 Tex. App. LEXIS 4503 at *10-12 (upholding the conviction of a defendant when the victim only saw the grip of the pistol used by the defendant during the aggravated robbery).

[49] (Appellant's Br. at 6, 25, 26).

[50] *See Price* at 266–67; *Johnson v. State*, No. 14-02-00901-CR, 2003 WL 22012693 at *2 (Tex. App.—Houston [14th Dist.] Aug. 26, 2003, pet. ref'd) (*not designated for publication*).

bank by displaying only the barrel of a pistol sticking out of a plastic bag. The appellant's conviction was upheld because the witness positively identified the firearm used in the robbery as a pistol, and because it is not necessary for the witness to have seen "the trigger, handle or cylinder or other indicia of a gun in order to support the conviction of the use of a deadly weapon, to wit, a firearm."[51] Further, the *Riddick* court reasoned that it is not necessary for the State to prove that the firearm is operative.[52] In addition, the statement by the defendant that the victim would be shot if the victim did not comply indicated the use of a firearm in the aggravated robbery.[53] The similarity of *Riddick* to this case cannot be denied, and it is clear from precedent that to uphold a conviction for aggravated robbery, it is sufficient that a victim only saw the barrel of a firearm used during the aggravated robbery.

> ii. *Appellant's argument that his conviction should be reformed to robbery since he only used a toy gun during the aggravated robbery fails because of the Law of Parties.*

Appellant also argues that he only used a toy gun during the commission of the aggravated robbery, and thus the deadly weapon element of the aggravated robbery offense was not met.[54] Common sense suggests that nobody other than Appellant would have a reason to lie about having a toy gun instead of a firearm

---

[51] *Riddick* at 710-11.
[52] *Id*. at 711 (*citing Wright*, 582 S.W.2d at 846).
[53] *Id.*
[54] (Appellant's Br. at 5-6).

when Appellant's criminal charge depends on whether he used a toy gun or a firearm. Further, there is evidence in the record that Appellant gave inconsistent accounts about the aggravated robbery to the police and Appellant's employer; specifically, Appellant told his employer that he did not use a gun at all during the aggravated robbery, but later told police that he used a toy gun.[55] Given Appellant's conflicting accounts of the events, his assertion that he only used a toy gun deserves little credence.

Assuming, *arguendo*, that Appellant did in fact use a toy gun during the aggravated robbery, Appellant admitted to police that he thought that the firearm used by his accomplice was real.[56] Under the Law of Parties, a person is criminally responsible for the conduct of another if he acts "with intent to promote or assist the commission of the offense [and] solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."[57] Since Appellant himself believed that his accomplice's firearm was real, whether Appellant used a firearm or not becomes irrelevant; the Law of Parties allows him to be charged with aggravated robbery because he was a party to the offense and knew that a firearm would be used in the commission of the offense. Given Lowe's testimony and Appellant's statement to the police, a rational juror could have found that Appellant, his

---

[55] (RR vol. 4, pp. 144-45).
[56] (RR vol. 4, p. 146).
[57] TEX. PEN. CODE ANN. § 7.02(a)(2).

accomplice, or both offenders used firearms because the firearms were similar in their realistic appearance, they were exhibited in the same threatening manner, and elicited the same terrified response from the victim.

## Conclusion

The evidence is sufficient to show the deadly weapon element of the offense, in that the evidence showed that Appellant, his accomplice, or both used firearms during the commission of the aggravated robbery. The evidence showed that Lowe was able to sufficiently identify the weapons used by Appellant and his accomplice as firearms. Further, while Appellant claimed he used a toy gun during the offense, he stated that he believed the firearm used by his accomplice was real. Regardless of whether Appellant used a firearm or a toy gun, under the Law of Parties, Appellant should be charged with the same offense as his accomplice (*i.e.*, aggravated robbery) because the evidence showed that at least one firearm was used and Appellant knew that a firearm would be used in the commission of the offense. The cumulative force of all of the evidence shows that the jury's guilty verdict for the aggravated robbery charge was rational.

Appellant's sole issue should be overruled.

Conclusion and Prayer

For the reasons stated above, no reversible error has been committed and the State respectfully requests that the Court should affirm the judgment and sentence in all things.

Respectfully submitted,

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782

By: /s/ Jeffrey S. Ford
Jeffrey S. Ford
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24047280
P.O. Box 10536
Lubbock, Texas 79408
(806)775-1166
FAX (806)775-7930
E-mail: JFord@co.lubbock.tx.us

Certificate of Service

I certify that a true copy of the foregoing brief has been delivered to Joel Cook, Attorney for Appellant, by e-mail delivery to joel_cook@outlook.com on October 25, 2015.

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782

By: /s/ Jeffrey S. Ford
Jeffrey S. Ford

17

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), I further certify that, relying on the word count of the computer program used to prepare the foregoing State's Response, this document contains 3,346 words, inclusive of all portions required by TEX. R. APP. P. 9.4(i)(1) to be included in calculation of length of the document.

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782


By: /s/ Jeffrey S. Ford
Jeffrey S. Ford